UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMEGA TOOL CORP.,

      Plaintiff,

v.

ALIX PARTNERS, LLP., ET AL.,

      Defendants.

_____/

Case No. 08-14914

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR REFERRAL TO BANKRUPTCY COURT PURSUANT TO L.R. 83.50 MOTION [19, 22]**

This matter comes before the Court on Defendants' motions for a referral to the Bankruptcy Court, specifically Judge Phillip J. Shefferly, pursuant to Local Rule 83.50 of the Eastern District of Michigan. The Court has diversity jurisdiction over this matter because Plaintiff Omega Tool Corp. ("Omega Tool") is a citizen of Canada and none of the Defendants are citizens of that country. Because the claims Plaintiff asserts in this action are "related to" a Chapter 11 bankruptcy proceeding, this Court GRANTS Defendants' motions.[1] Pursuant to Local Rule 83.50, this matter is referred to Judge Phillip J. Shefferly in the Bankruptcy Court before whom Mayco's Chapter 11 proceeding remains pending

---

[1]Two motions were filed. One by Defendants AlixPartners, LLP (incorrectly identified in Plaintiff's Amended Complaint as AlixPartners, LLC), Richard S. Abbey, and Steven Olmstead (collectively, "AlixPartners"). (Doc. No. 19.) The other by Defendants Robert Roberts, Robert Fines, Thomas Littman, Kirtland Capital Partners, II L.P., Kirtland Capital Partners, III L.P., and Kirtland Capital Partners, IV L.P. (collectively, the "Kirtland Defendants). (Doc. No. 22.) Only one Defendant, PNC Bank, has not filed or joined in these motions for referral to the Bankruptcy Court.

so that it may make findings of facts and conclusions of law for review by this Court. *See* 28 U.S.C. § 157; E.D. Mich. L.R. 83.50.

## I.    Facts[2]

### A.  Omega Tool's Contractual Relationship with Mayco

Omega Tool manufactures plastic injection molds. Mayco Plastics, Inc. ("Mayco") was a Tier I automotive supplier that supplied plastic injection molded parts to original equipment manufacturers ("OEMs") and other Tier I suppliers (collectively, "Customers"). (Am. Compl. ¶ 14.)

Although Mayco used Omega Tool's molds to manufacture parts for Customers, the Customers would typically order, purchase, and own the molds. (*Id.* at ¶ 15.) Mayco would subcontract the manufacture of the molds with companies like Omega Tool. (*Id.* at ¶ 15.) Until approximately August 2006, Omega Tool supplied Mayco with plastic injection molds pursuant to various contracts. (*Id.* at ¶¶ 14, 20, 34, 41.) In the typical scenario, the Customer would purchase the mold from Mayco, and Mayco would use the funds received from the Customer to pay Omega Tool for its manufacture and delivery of the molds. (*Id.*) In its amended complaint, Omega Tool refers to this transfer of funds from the Customer to Mayco to Omega Tool as "Pass Through Payments." (*Id.*)

Omega Tool alleges numerous breaches by Mayco.

For example, Mayco repeatedly kept Pass Through Payments that should have been paid to Omega Tool but were instead used to pay its own operating expenses. When Omega Tool discovered this, it threatened to stop making molds and delivering them to

---

[2]Solely for the purpose of these motions, Defendants accept the allegations in Plaintiff's amended complaint as true.

Mayco.  (*Id.* at ¶¶ 16, 17.)  On August 8, 2005, Omega Tool and Mayco worked out a payment plan to allow Mayco to repay its $8.8 million debt ("Repayment Agreement"). Mayco soon breached the Repayment Agreement.  (*Id.* at ¶¶ 19-22.)

Mayco's breach of the Repayment Agreement left Omega Tool short on operating capital.  In November 2005, Omega Tool factored approximately $2,251,000 of Mayco's receivable.  The factoring company, NatExport, paid the amount to Omega Tool.  Because the factoring arrangement worked like a loan, Omega Tool was liable to NatExport for repayment.  (*Id.* at ¶¶ 23-24.)  Mayco agreed to pay the factored invoices directly to NatExport ("Factoring Agreement").  Mayco soon breached the Factoring Agreement.  It failed to make any payments to NatExport, leaving Omega Tool with over $2.2 million in debt.  (*Id.* at 25-26.)

In March 2006, Omega Tool learned that Mayco had hired bankruptcy counsel and was operating under the threat of insolvency.  On March 28, 2006, Omega Tool sent Mayco a letter demanding that it provide Omega Tool with adequate assurance of future performance.  Mayco failed to do so, and on April 26, 2006, Omega Tool sent Mayco a letter repudiating the contract it had with Mayco for the sale of molds.  (*Id.* at ¶¶ 28-29.)

In the Spring of 2006, after Omega Tool repudiated the contract, it entered into negotiations with Mayco; Mayco's controlling stakeholder, Defendant Kirtland Capital, LLC ("Kirtland");  and Mayco's secured lender, Defendant PNC Bank.  Representatives from Mayco told Omega Tool that Kirtland and/or PNC Bank had agreed to infuse equity into Mayco, but this infusion was contingent upon Mayco's resolving its differences with Omega Tool.  (*Id.* at ¶¶ 30-31.)   Mayco's Chief Operating Officer and Chief Executive Officer, Defendants Robert Roberts and Robert Fines respectively, along with representatives from

3

Kirtland and PNC Bank began negotiating an agreement with Omega Tool to pay down Mayco's debt. (*Id.* at ¶ 32.) Omega Tool alleges that, based upon information and belief, negotiations included representatives from Defendants AlixPartners, LLP, Richard S. Abbey, and Steven Olmstead (collectively, "AlixPartners") on behalf of PNC Bank. (*Id.* at ¶ 33.) As a result of these negotiations, on April 28, 2006, Omega Tool and Mayco entered into the Continuing Relationship Between Mayco and Omega Agreement ("Continuing Relationship Agreement"). (*Id.* at ¶ 34.) That Agreement required Mayco to: (1) remit previously unpaid Pass Through Payments to Omega Tool, and (2) make future Pass Through Payments on a timely basis. (*Id.* at ¶¶ 35-37.) By the end of July, 2006, Mayco had breached the Continuing Relationship Agreement. (*Id.* at ¶¶ 39-41.) Omega Tool alleges that, because Defendants (1) failed to disclose to Omega Tool that Mayco had received Pass Through Payments, and (2) assured Omega Tool that Mayco would make Pass Through Payments, Omega continued to ship molds to Mayco through July 2006. Omega Tool further alleges that Defendants knew that Mayco had diverted Pass Through Payments to its own use and knew that Omega Tool would never be paid. (*Id.* at ¶¶ 42-50.)

### B. Mayco's Chapter 11 Bankruptcy Proceedings

Mayco is currently the debtor in Chapter 11 proceedings before the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 06-52727, pending before Judge Phillip J. Shefferly ("Bankruptcy Proceeding"). On September 12, 2006, Mayco filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* Omega Tool alleges that, as of the Petition date, Mayco owed it

4

2:08-cv-14914-NGE-MJH   Doc # 42   Filed 06/25/09   Pg 5 of 16   Pg ID 535

$10.5 million -- approximately $6.9 million of which constituted unpaid Pass Through Payments.  (*Id.* at ¶¶ 51-53.)

In the Bankruptcy Proceeding, Mayco filed Schedules classifying its debt to Omega Tool as a secured claim in the amount of $4,360,228.50.  (AlixPartners' Ex. 3, Schedule D at 5.)  Mayco's Schedules also identify a secured claim in the amount of $5,951,188.92 in favor of Wings Tool Technology, Inc. ("Wings Tool"), as a successor to Omega.  (*Id.*)

On September 21, 2006, the Court entered its Order Pursuant to Section 327 of the Bankruptcy Code Authorizing the Employment of AlixPartners, LLC *Nunc Pro Tunc* as Financial Advisors to the Debtors.  (AlixPartners' Ex. 4, 9/21/06 Order, Case No. 06-52727, Shefferly, J.)  Pursuant to the "Employment Order," AlixPartners was authorized to serve as financial advisor to Mayco/Debtors, effective as of the September 12, 2006 Petition date and on the terms and conditions set forth in that Order.

On March 26, 2007, the Bankruptcy Court entered its Order Authorizing Settlement with DaimlerChrysler Corporation, DaimlerChrysler Motors Co., LLC, and DaimlerChrysler Canada, Inc. ("Settlement Order").  (AlixPartners' Ex. 5.)  That Order provides that Omega Tool (1) is to be paid $1,331,424 in "full payment satisfaction of" a receivable for tools manufactured prepetition for DaimlerChrysler (*id.* at ¶ A); (2) is to receive a portion of subsequent tooling payments from DaimlerChrylser, the first $619,835 of which was to be paid directly to Omega Tool (*id.* at ¶ B); and (3) is to receive $65,000 from PNC Bank "in full satisfaction of Omega's claims for interest and/or attorney fees related to the DCC Tooling," and Omega Tool agreed "not to assert further claims for interest and/or attorney fees against tooling (or its proceeds) manufactured by Omega for the benefit of GM or TRW for which Omega has not yet been paid."  (*Id.* at ¶ C.)

5

On August 10, 2007, Mayco filed its proposed Liquidating Plan in the Bankruptcy Proceeding.  (AlixPartners' Ex. 2.)

On January 12, 2009, the Bankruptcy Court confirmed the Liquidating Plan. (AlixPartners' Ex. 1, Confirmation Order.)  That Liquidating Plan sets out the following. Each and every claim asserted against Mayco is impaired, which means that none of Mayco's creditors will receive the full amount of its claim from Mayco's bankruptcy estate. (AlixPartners' Ex. 2, Liquidating Plan at 10.)  The Reorganized Debtor, Disbursing Agent, and Post Confirmation Committee, appointed under Article VI of the Liquidating Plan, are to administer the bankruptcy estate's assets and make distributions in accordance with the confirmed Plan.  (*Id.* at 13-18.)  Mayco reserves the right to file an adversary proceeding against Omega Tool and its affiliates "to determine the nature and extent of their liens in tooling, as well as to avoid such liens and to enforce warranty claims arising out of the maufacturer [sic] and design of such tooling."  (*Id.*, Disclosure Statement at ¶ C.2.)

The Plan limits liability as follows:

> The Debtor, the Reorganized Debtor, the Committee, the Post Confirmation Committee, the Disbursing Agent, and all of their stockholders, directors, officers and agents, including their counsel, accountants, consultants, and/or employees shall not be liable to any person or entity for any actions taken or omitted to be taken in connection with their actions or duties in the Case or under this Plan, except that such liability may be imposed for gross negligence and/or willful misconduct.  The Bankruptcy court shall have exclusive jurisdiction to resolve any issues concerning such liability.

(*Id.* at ¶ 13.1.)  It further provides that the Bankruptcy Court retains jurisdiction to, *inter alia*, hear all objections to the allowance of claims and adjudicate adversary proceedings and contested matters.  (*Id.* at ¶¶ 12.1.A, F.)  The Bankruptcy Court also possesses jurisdiction over Mayco's books and records, and retains jurisdiction "[t]o hear and determine any

6

matter concerning access to, or information contained in, [Mayco]'s books and records."
(*Id.* at ¶ 12.1.J.)

### C. This Lawsuit

Omega Tool filed this action on November 25, 2008 alleging tort claims against Defendants, including tortious interference with a contract, tortious interference with a business relationship or expectancy, fraudulent misrepresentation, conversion, and silent fraud.  (Am. Compl.)

## II.   Analysis

Defendants argue that Omega Tool's tort claims against them are merely recast claims for breach of contract against Mayco, the Debtor in a pending Chapter 11 Bankruptcy Proceeding, in a thinly-veiled attempt to recover more here than in that pending Bankruptcy Proceeding.  Defendants further argue that, because these claims are within the Bankruptcy Court's "related to" jurisdiction, this matter should be referred to the Bankruptcy Court.  This Court agrees with Defendants.  Omega Tool's claims are within the Bankruptcy Court's jurisdiction because they are "related to" Mayco's Bankruptcy Proceedings.

### A. Bankruptcy Jurisdiction

Federal district courts are vested with original but non-exclusive jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Bankruptcy proceedings are divided into "core" and "non-core" jurisdiction.  *See, e.g., Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 320-21 (6th Cir. 2006).  Under 28 U.S.C. § 157(a), district courts are permitted to refer both core and non-core cases to bankruptcy courts.  The United States District Court for the Eastern

7

District of Michigan, through Local Rule 83.50, has elected to exercise this statutory authority by mandating that both core and non-core proceedings be referred to the Bankruptcy Court.   E.D. Mich. L.R. 83.50(a)(1)-(3).   "The significance of whether a proceeding is core or non-core is that the bankruptcy judge may hear non-core proceedings related to bankruptcy cases but cannot enter judgments and orders without consent of all parties to the proceedings."  *Eglinton v. Loyer (In re G.A.D., Inc.)*, 340. F.3d 331, 336 (6th Cir. 2003) (citing 28 U.S.C. § 157(c)).  "Without consent from the parties, a district judge must make final determinations after considering the findings and conclusions of the bankruptcy judge and after conducting de novo review of matters to which any party has objected."  *Id; see also* Local Rule 83.50(a)(3)(A), (B) (same).

Defendants assert that this matter is a non-core proceeding "that is otherwise related to a case under title 11" and thus falls within the Bankruptcy Court's jurisdiction under  28 U.S.C. § 157(c)(1).  Omega Tool does not quarrel with identifying this matter as a non-core proceeding.  Rather, it argues that (1) this action is not related to the Mayco Bankruptcy Proceeding; and (2) referral would be futile because cause exists for withdrawal.  This Court disagrees.

### B.  "Related" Proceedings

The Sixth Circuit Court of Appeals has adopted the definition of a "related" proceeding that was "first articulated" by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  *See Lindsey v. O'Brien (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996).  "The 'usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding *could conceivably have any effect* on the estate being administered in bankruptcy.'"  *In re Dow Corning Corp.*, 86

8

F.3d at 489 (quoting *Pacor*, 743 F.2d at 994 (emphasis added)).  Courts applying the *Pacor* test, including this Court, have routinely held that a case between two non-debtor parties is "related to" a bankruptcy proceeding when, for example, the outcome of the case may increase or decrease claims against the debtor.  *See, e.g., Randall & Blake, Inc. v. Evans (In re Canion)*, 196 F.3d 579, 586-87 (5th Cir. 1999) (citing cases); *Carr v. Mich. Real Estate Ins. Trust (In re Mich. Real Estate Ins. Trust)*, 87 B.R. 447, 456-58 (E.D. Mich. 1988); *Novi Promenade Assocs. Ltd. P'ship v. Target Corp.*, No. 02-CV-72890, 2006 WL 3751155 (E.D. Mich. Dec. 18, 2006).

Despite Omega Tool's arguments to the contrary, this case could conceivably have an effect on Omega Tool's claims against Mayco's bankruptcy estate.  First, in the Bankruptcy Court, Omega Tool, on behalf of Wings Tool, has asserted a claim against Mayco's bankruptcy estate for $10.5 million for unpaid molds -- $6.9 million of which consists of Pass Through Payments that Mayco allegedly received but failed to remit to Omega Tool.[3]  (Am. Compl. ¶¶ 51-53.)  In this action, Omega Tool is attempting to recover from Defendants for the same injuries (unremitted Pass Through Payments) that constitute the major portion of its $10.5 million claim against Mayco's bankruptcy estate.  It is well-established that "a claimant cannot receive a double recovery for the same injury, even

---

[3] Omega Tool's claim is listed in Mayco's Schedules, and it is not identified as "disputed, contingent, or unliquidated."  (AlixPartners' Ex. 3, Schedule D at 5.)  Therefore, Omega Tool was not required to file a proof of claim to be entitled to a distribution from Mayco's estate.  *See* 11 U.S.C. § 1111(a) ("A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules . . . , except a claim or interest that is scheduled as disputed, contingent, or unliquidated.").  Presumably in reliance on this scheduled claim, Omega Tool has also participated actively as a creditor in Mayco's Chapter 11 proceedings, including entering into a stipulation to resolve a portion of its claims against Mayco.  (AlixPartners' Ex. 5, Settlement Order.)

where alternate legal theories will support the same finding of liability." *Scarff Bros., Inc. v. Bischer Farms, Inc.*, 546 F. Supp.2d 473, 487 (E.D. Mich. 2008).  Thus, Omega Tool's claim against Mayco in the Bankruptcy Proceeding will necessarily be reduced by any amount Omega Tool is able to recover from Defendants in this action for the same injuries. Any reduction in Omega Tool's bankruptcy claim will make more funds available for distribution to Mayco's other creditors in the Bankruptcy Proceeding.  Because there is a potential benefit to Mayco's estate if Omega Tool prevails in this action, this action is "related to" the Mayco Bankruptcy Proceeding.

Second, recovery by Omega Tool in this action may lead to a new claim for indemnification against Mayco's bankruptcy estate brought by AlixPartners, Roberts and the Kirtland Defendants.  AlixPartners' Engagement Letter with Mayco provides that Mayco must indemnify it "from and against all claims, liabilities, losses, expenses, and damages arising out of or in connection with the engagement of AlixPartners."  (AlixPartners' Ex. 7, Engagement Letter § 7.)  Roberts and the Kirtland Defendants assert that they too will have contractual and/or common law indemnification claims against Mayco's bankruptcy estate in the event of a recovery in this lawsuit.  Thus, the outcome of this case could not only decrease Omega Tool's secured claim but also lead to a new unsecured claim from Defendants.  This new claim may affect distributions and is thus "related to" the Mayco Bankruptcy Proceeding.

Finally, a third factor weighs in favor of a referral to the Bankruptcy Court.  That Court currently possesses jurisdiction over Mayco's books and records, and the Liquidating Plan provides that the Bankruptcy Court will retain jurisdiction "[t]o hear and determine any matter concerning access to, or information contained in, [Mayco]'s books and records."

10

(AlixPartners' Ex. 2 at ¶ 12.1.J.)  This litigation concerns Mayco's alleged receipt and use of Pass Through Payments, and its resolution requires an examination of Mayco's books and records.

Omega Tool does not dispute that the Bankruptcy Court has jurisdiction to determine all issues concerning information in Mayco's books and records, or that the outcome of this case may decrease its claim against Mayco's bankruptcy estate and may also give rise to indemnification claims by Defendants against the Mayco bankruptcy estate.  Rather, Omega Tool argues that this litigation is not "related to" the Mayco Bankruptcy Proceedings because the "net effect" of any decrease in Mayco's claim against the Bankruptcy Estate will be fully "offset" by Defendants' indemnification claims.  This argument fails for several reasons.

First, Omega Tool fails to cite any authority for its "net effect" test.  The "related to" test applied by the Sixth Circuit asks whether the outcome of litigation "'*could conceivably have any effect* on the estate being administered in bankruptcy.'"  *In re Dow Corning Corp.*, 86 F.3d at 489 (quoting *Pacor*, 743 F.2d at 994 (emphasis added)).  Accordingly, this Court looks for "any effect;" not a "net effect" on the Bankruptcy Estate.

Second, there is no set of circumstances under which Omega Tool's claims and Defendants' indemnification claims against the Mayco Bankruptcy Estate would simply offset each other.  Omega Tool erroneously assumes that the "net effect" on the Bankruptcy Estate will be zero because any decrease in Omega Tool's claims will be offset dollar-for-dollar by Defendants' indemnification claims.  Omega Tool ignores the critical fact that all claims against the Mayco Bankruptcy Estate are impaired.  This means that they are worth less than their "whole dollar" value.  Thus, if Omega Tool recovers $100 in this

case, it claims against the Bankruptcy Estate will be reduced by $100. On the other hand, Defendants' corollary indemnification claims, assuming they prove to be successful, will never be worth $100 because all claims against the Bankruptcy Estate are impaired. Omega Tool's "offset" argument also fails if some, but not all Defendants succeed on their indemnification claims. Finally, because the AlixPartners Defendants are entitled to recover reasonable attorney fees and costs in connection with their indemnification claims (*see* AlixPartners' Ex. 7, Engagement Letter at § 7), the potential "net effect" of Omega Tool's success on its claims in this litigation will not offset dollar-for-dollar AlixPartners' recovery for any indemnification claims it asserts against Mayco in the Bankruptcy Proceedings.

Similar to its unsupported "net effect" rule, Omega Tool seeks to impose a "futility" requirement on bankruptcy referrals that simply does not exist. Despite Omega Tool's arguments for the proposition, it cites no authority that a district court must first determine that there is no basis to withdraw a reference *before* the matter is even referred to the Bankruptcy Court. No such requirement exists under 28 U.S.C. § 157 or Local Rule 83.50. The statutory section Omega Tool relies upon refutes, rather than supports, its argument. Section 157(d) provides that "[t]he district court may withdraw, in whole or in part, any case or proceeding underlined referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis added). A plain reading of that statutory language indicates that withdrawal motions are considered after proceedings have been referred to the Bankruptcy Court; not before. There is nothing in § 157 that supports a requirement that a party seeking a referral of a matter to the Bankruptcy Court must first prove that its request would not be futile.

12

Even if such a requirement for referral existed, Omega Tool has not shown that "cause" exists and it would succeed on a withdrawal motion. Courts typically consider the following factors in determining whether "cause" exists to withdraw a reference:[4] "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." *Venture Holdings Co., LLC v. Winget*, No. 05-73639, 2006 WL 800790, at * 1 (E.D. Mich. Mar. 6, 2006) (quoting *South St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996)).

Factors (2), (3), (4), and (5) weigh in favor of referring this case to Bankruptcy Court. As to Factors (2) and (4), the policies of efficiency and uniformity of administration are advanced by having this action adjudicated in the same forum as Mayco's Chapter 11 proceedings. Bankruptcy Judge Shefferly is very familiar with the facts and circumstances of Mayco's commercial transactions with Omega Tool, having presided over Mayco's Chapter 11 proceedings for over two years. Moreover, all of Mayco's books and records are under the Bankruptcy Court's jurisdiction. As to Factor (3), delay is not an issue because Defendants filed their motions for referral at the initial stage of this litigation. Regarding Factor (5), although Omega Tool argues that Defendants are forum shopping

---

[4]This Court may withdraw a reference if (1) there is "cause" for withdrawal, or (2) a proceeding requires the consideration of both bankruptcy law and "other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Omega Tool does not argue that this case requires the consideration of non-bankruptcy federal law.

13

with their referral requests, it is Omega Tool that filed this lawsuit despite its knowledge and participation in the Mayco Bankruptcy Proceedings.

That this is a non-core proceeding and Omega Tool has demanded a jury trial in this action does not mean a future withdrawal of reference is inevitable.  As recently observed by this Court in *Venture Holdings*, three factors are considered when determining "whether a jury demand necessitates withdrawal of reference:"  "(1) whether the case is likely to reach trial, (2) whether protracted discovery with court oversight will be required, and (3) whether the bankruptcy court has familiarity with the issues presented."  2006 WL 800790 at *2 (internal quotation marks and citations omitted).

Considering the first factor, this Court once again observes that this litigation is in its initial stage and far from trial.  This fact proved crucial in *Kenai Corp. v. National Union Fire Insurance Co. (In re Kenai Corp.)*, 136 B.R. 59 (S.D. N.Y. 1992).  There, the district court rejected an argument similar to one made by Omega Tool here -- that "once it establishes a right to a jury trial, the district court must immediately withdraw the entire case for all purposes, including dispositive motions."  *Id.* at 61.  The court observed that, although "bankruptcy judges may not issue final orders in non-core proceedings," they are not precluded from "issu[ing] proposed findings of fact and conclusions of law."  *Id.* (citing 28 U.S.C. § 157(c)(1)).  Moreover, "the district court may enter a final judgment or order after considering the bankruptcy court's findings and after reviewing any issues to which the parties have objected de novo."  *Id.* (citing § 157(c)(1)).  "Courts have interpreted this provision as allowing bankruptcy courts to make recommendations on dispositive motions based on their proposed findings of fact and conclusions."  *Id.*  Thus, the court reasoned, the mere presence of a jury demand was insufficient to require a withdrawal of the case

14

from the bankruptcy court.  Rather, "the appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready."  *Id.* (internal quotation marks and citation omitted).  The court explained its reasoning:

> A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts.  Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

*Id.*  Defendants have motions to dismiss pending in this matter.  (Doc. Nos. 24, 25.)  Thus, for all the reasons stated in *In re Kenai Corp.*, the fact that Omega Tool has filed a jury demand in this case does not mean that a withdrawal of reference would be necessary thus rendering Defendants' motions for referral futile.  It is simply too early in this litigation to determine whether this case is likely to reach trial.

As to the second and third factors, extensive discovery is required on Omega Tool's claims.  For example, Omega Tool will have to establish that its financial injuries arising from claims against Defendants here have not already been compensated under a Settlement Order with DaimlerChrylser entered in the Bankruptcy Proceedings. (AlixPartners' Ex. 5.)  The Bankruptcy Court is very familiar with Mayco's financial affairs and transactions; all facts relevant to Omega Tool's claims here.  That Court also has jurisdiction over Mayco's books and records.  The Bankruptcy Court is thus in the best position to efficiently and uniformly address the claims raised in Omega Tool's amended complaint.

15

**III.   Conclusion**

For the above-stated reasons, Defendants' motions for referral to the Bankruptcy

Court pursuant to E.D. Mich. L.R. 83.50 are GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 25, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 25, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager